UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DONALD R. HARTWIG,

v.  Case No. 8:05-cr-498-T-17MSS
    8:08-cv-1563-T-17MSS

UNITED STATES OF AMERICA.
_____

O R D E R

This cause is before the Court on Defendant Donald R. Hartwig's 28 U.S.C. § 2255 motion to vacate, set aside, or correct an allegedly illegal sentence. (Doc. D-782; D-cv-1). A review of the record demonstrates that Hartwig's motion to vacate must be denied.

BACKGROUND

Beginning in 2004, federal, state and local authorities conducted an investigation of a large scale drug trafficking organization operating in the Middle District of Florida and a number of other jurisdictions, including Texas and California. See (Hartwig's July 12, 2007 PSR ("PSR") at ¶¶ 12-14). That investigation was supervised by two different U.S. Attorney's Offices – one in the Middle District of Florida and the other in the Southern District of Texas – and involved the use of, among other law enforcement techniques, federal wiretaps. (Id. at ¶¶ 12, 22).

In late June 2005, law enforcement agents learned that one of the organization's members – Edilberto Portillo – was planning to use a courier to ship a substantial amount

of cocaine from Texas to another co-conspirator – Abraham Saucedo-Lopez – in Palmetto, FL. (Id. at ¶¶ 17-18). As a result of this information, agents established surveillance at Saucedo's residence on June 30, 2005, and observed Hartwig arrive in a black truck later determined to be containing over 60 kilograms of cocaine. (Id. at ¶ 18; D-567 at 18). Agents obtained a search warrant for Saucedo's residence, and ultimately seized a total of 64 kilograms of cocaine,[1] $383,372 in drug proceeds, and two other items of drug distribution paraphernalia. (PSR at ¶¶ 18-19; D-567 at 18). Hartwig was arrested that same night and made a number of incriminating post-*Miranda* statements to law enforcement. (PSR at ¶ 20). Due to the on-going nature of the federal wiretap investigation, however, Hartwig was charged state-side, *id.* at 89, and eventually made bail.

Several months later, in early November 2005, agents learned via intercepted wiretap calls that Hartwig and Portillo were planning the delivery of another substantial shipment of cocaine, this time to Atlanta, Georgia. (PSR at ¶ 12; D-567 at 18-19). Hartwig – who was still on pre-trial release at the time – was stopped in Atlanta before he could complete this delivery, however, and was found in the possession of 388 kilograms of cocaine. (PSR at ¶ 23).

Hartwig was, thereafter, indicted federally in both the Middle District of Florida and the Southern District of Texas with various drug-related offenses. (PSR at ¶¶ 1-5). On March 26, 2007, Hartwig appeared before the Honorable Mary S. Scriven in the Middle District of Florida, and formally executed a plea agreement with the United States Attorney's Offices for the Middle District of Florida and the Southern District of Texas which

---

[1] Six of these kilograms were seized from Saucedo's vehicle after he left his 2 residence following Hartwig's delivery of the cocaine. (PSR at ¶ 18).

2

resolved all of the charges pending against him. (Id. at ¶ 6; D-567). In that plea agreement, Hartwig agreed to plead guilty to a section 846 conspiracy charge in the Middle District of Florida, and to a one-count Information from the Southern District of Texas charging him with a section 841 offense. (D-567 at 1-2).

Of significance to this proceeding, Hartwig's plea agreement contained a provision entitled "Defendant's Waiver of Right to Appeal and Right to Collaterally Challenge the Sentence." (D-567 at 15). In that provision, Hartwig expressly waived his right to appeal his sentence:

> . . . or to challenge it collaterally on any ground, including the ground that the Court erred in determining the applicable guidelines range . . ., except (a) the ground that the sentence exceed[ed] the defendant's applicable guidelines range <u>as determined by the Court</u> . . .; (b) the ground that the sentence exceed[ed] the statutory maximum penalty; or (c) the ground that the sentence violate[d] the Eighth Amendment to the Constitution . . .

(Id.) (emphasis in original).

In exchange for this appeal and collateral attack waiver, the government agreed, among other things, to dismiss the remaining charges pending against Hartwig in both the Middle District of Florida and the Southern District of Texas, *id.* at 3, not to charge Hartwig with any other offenses related to the conduct giving rise to his plea agreement, *id.* at 4, not to seek an upward departure, *id.*, not to oppose Hartwig's request that he receive credit for acceptance of responsibility, *id.* at 5, not to oppose Hartwig's receiving the safety valve, *id.* at 6, and to file a motion pursuant to USSG §5K1.1 on Hartwig's behalf if he provided substantial assistance in the investigation and prosecution of others, *id.* at 6-7.

Following Hartwig's plea, the Probation Office prepared a PSR in which it determined that Hartwig's guideline imprisonment range was 135-168 months. (PSR at ¶

3

120). The Probation Office predicated this determination on its finding that Hartwig's relevant conduct amounted to 150 kilograms or more of cocaine, and its conclusion that, while Hartwig was entitled to the safety valve, he was not eligible for a minor role reduction. (Id. at ¶¶ 75, 76, 78). Hartwig did not object to these findings. (Addendum to PSR).

On August 2, 2007, Hartwig appeared before the Honorable Elizabeth A. Kovachevich, and was sentenced principally to concurrent terms of imprisonment of 135 months on both the Middle District of Florida and the Southern District of Texas cases. (D-679, 681). Hartwig did not appeal his sentence or conviction.

On August 11, 2008, however, Hartwig filed the instant section 2255 motion claiming that his attorney was constitutionally ineffective relative to his sentencing. (D-cv-1).

## DISCUSSION

In his section 2255 motion, Hartwig asserts two arguments in support of his ineffective assistance claims: (1) that his attorney failed to object to the fact that Hartwig was sentenced on the Southern District of Texas case, which Hartwig maintains constituted a breach of his plea agreement; and (2) that his attorney failed to argue that he was entitled to a minor role. (D-cv-1 at 4-5, 14-19). For the reasons discussed below, Hartwig's Sixth Amendment challenges are foreclosed by the collateral attack waiver in his plea agreement, and are also substantively without merit.

I. HARTWIG'S INEFFECTIVE ASSISTANCE CLAIMS ARE FORECLOSED BY THE COLLATERAL ATTACK WAIVER IN HIS PLEA AGREEMENT

It is well-settled that a defendant can knowingly and voluntarily waive his right to collaterally challenge his sentence, and that such waivers preclude a defendant from

4

attacking his sentence in a section 2255 proceeding through claims of ineffective assistance of counsel during sentencing. *Williams v. United States*, 396 F.3d 1340, 1341-42 (11th Cir. 2005); *United States v. Cockerham*, 237 F.3d 1179, 1182 (10th Cir. 2001); *United States v. Mason*, 211 F.3d 1065, 1069 (7th Cir. 2000). The rationale behind this rule is obvious. As the Eleventh Circuit noted in *Williams*, to hold otherwise "would permit a defendant to circumvent the terms of the sentence-appeal waiver simply by recasting a challenge to his sentence as a claim of ineffective assistance, thus rendering the waiver meaningless." *Id.* at 1342; *see also United States v. Djelevic*, 161 F.3d 104, 107 (2d Cir. 1998) (although "dress[ed] up" as a Sixth Amendment claim, defendant really is challenging the correctness of his sentence under the guidelines and, therefore, is barred by the plain language of his plea agreement; to allow his claim would be to "render[ ] meaningless" such plea agreement waivers).

It is equally well settled that, for the Court to enforce such waivers, the government need only demonstrate either (1) that the district court specifically questioned the defendant concerning the waiver during his Rule 11 plea colloquy, or (2) that it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver. *United States v. Lattimore*, 185 Fed. Appx 808, 2006 WL 1674144 at *1 (11th Cir. 2006) (per curiam) (citing *United States v. Bushert*, 997 F.2d 1343, 1351 (11th Cir. 1993)). It is clear from the record that both of these requirements were satisfied in this case.

At Hartwig's guilty plea hearing, the Court engaged in a careful and thorough review of the appeal and collateral attack waiver in Hartwig's plea agreement to make sure he understood it. The Court, for example, specifically advised Hartwig:

THE COURT: If you turn to page 15 of the plea agreement, Mr.

5

Hartwig, you will see a Paragraph 5 there, which provides that **you agree to waive your right to appeal and your right collaterally to challenge your sentence in this case in any other forum.** This provision is here, Mr. Hartwig, because in a case where a defendant . . . goes to trial and is convicted after a trial or in a case when a defendant pleads guilty in an open plea, that is a plea without a plea agreement, that defendant would retain almost as a matter of right the ability to appeal his sentence or to challenge the sentence collaterally through another forum.

By signing this plea agreement, **you are giving up any such right to appeal or to collaterally challenge your sentence** except for the limited reasons that are in this plea agreement. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: The only ability you will have to challenge your sentence after you have been sentenced in this case is for the reasons in the plea agreement . . .

\*\*\*

THE DEFENDANT: Yes.

THE COURT: That's the only time, sir, that you could appeal or collaterally challenge your sentence. If you attempt to do so in any other circumstance, it is very likely that the appeals court will reject your appeal or the court in which the collateral challenge is filed would dismiss it, because you have given up your right to file any such challenge except for the reasons that were in this plea agreement. Do you understand that?

THE DEFENDANT: Yes.

(D-792 at 25-26) (emphasis added).

In addition to this exchange, the Court explicitly warned Hartwig at another point in his plea colloquy that "it will be the Government's position that **you will not have the ability collaterally to challenge the plea or your sentence in this case due to the representation that has been provided to you by your lawyers.**" (*Id.* at 8) (emphasis added).

In light of this record, the collateral attack waiver in Hartwig's plea agreement is clearly enforceable here. To hold otherwise would not only contravene the language[2] and meaning behind that waiver provision, it would also unfairly allow Hartwig to benefit from the concessions made by the government in his plea agreement without requiring him to live up to his end of the bargain. *United States v. Wenger*, 58 F.3d 280, 282 (7th Cir. 1995) (defendant exchanged his right to appeal for prosecutorial concessions, and therefore "he cannot have his cake and eat it too").[3]

II. HARTWIG'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS ARE SUBSTANTIVELY WITHOUT MERIT IN ANY EVENT

In addition to being foreclosed by the collateral attack waiver in his plea agreement, Hartwig's ineffective assistance of counsel claims are substantively without merit as well. Under the two (2) prong analysis announced by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), a section 2255 movant asserting ineffective assistance claims must show (1) that his attorney's performance fell below an objective standard of reasonable professional assistance, and (2) that he was prejudiced by that deficient performance. *Id.* at 687. A petitioner's failure to prove both of these prongs is fatal to any request for collateral relief. *Id.* at 697 ("there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one").

For an attorney's performance to be deemed constitutionally deficient, a petitioner

---

[2] Hartwig does not claim – nor could he – that he did not knowingly and voluntarily enter into this waiver. Indeed, he has conspicuously failed to address the issue entirely in his motion.

[3] The government states, in its response, that it takes no position at this point as to whether, and to what extent, Hartwig may be entitled to a future Rule 35 motion, including what impact, if any, the instant motion may have on that issue.

bears the "heavy" burden of showing that his counsel's conduct fell outside the wide range of professionally competent assistance under the particular facts of his case. *Id.* at 690; *Chandler v. United States*, 218 F.3d 1305, 1313-14 (11th Cir. 2000) (en banc). In other words, "a petitioner must establish that no competent counsel would have taken the action that his counsel did take." *Chandler*, 218 F.3d at 1315. The issue in this regard "is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Id.* at 1313 (quoting *Burger v. Kemp*, 483 U.S. 776 (1987)).

In undertaking this analysis, courts "must avoid second-guessing counsel's performance," must avoid "using 'the distorting effects of hindsight,' and must evaluate the reasonableness of counsel's performance 'from counsel's perspective at the time.'" *Id.* at 1314, 1316 (quoting *Strickland*, 466 U.S. at 689). Further, "[c]ourts must 'indulge [the] strong presumption' that counsel's performance was reasonable and that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'" *Id.* (quoting *Strickland*, 466 U.S. at 689-90). Therefore, "counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken 'might be considered sound trial strategy.'" *Id.* (quoting *Darden v. Wainwright*, 477 U.S. 168 (1986)).

With respect to the second prong of the *Strickland* analysis, a petitioner must demonstrate that there is a reasonable probability that, but for his attorney's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Conclusory allegations propounded by a petitioner in this regard do not meet this standard and do not merit relief. *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (en banc).

Hartwig has failed to satisfy either of the two *Strickland* prongs here. The gist of his first claim is that his attorney should have argued that his concurrent sentence of 135 months for the Southern District of Texas case violated the terms of his plea agreement. Hartwig predicates this claim on his assertion that it was his "understanding" that he would only be sentenced on the conspiracy charge filed in the Middle District of Florida and the charge in the Southern District of Texas would be dismissed. (D-cv-2-4, 14-16).

This assertion finds no support in the record. The express terms of Hartwig's plea agreement, along with his plea colloquy with the Court, made clear that Hartwig was pleading guilty to two separate charges: the section 846 conspiracy count contained in the Middle District of Florida indictment, and the section 841 offense alleged in the Southern District of Texas Information. (D-567 at 1-2; D-792 at 12-13, 29-31, 34-35, 42-43).

Hartwig was also put on notice in both his plea agreement, (D-567 at 1-2) and – as evidenced by the exchange below – in his plea colloquy that he was subject to separate and distinct penalties for each of these offenses.

> THE COURT: The penalties for these offenses are . . . on page 2. Count 1 of the second superseding indictment and Count 1 of the information originating from Texas are . . . each punishable by a mandatory minimum term of incarceration of ten years for each offense, a maximum term of incarceration . . . of life for each offense, a fine of $4 million as a maximum for each offense; and a term of supervised release of at least five years for each offense. Do you understand these penalties?
>
> THE DEFENDANT: Yes, but I have a question.
>
> THE COURT: Yes, sir.
>
> THE DEFENDANT: You said "each"?
>
> THE COURT: That's correct.
>
> THE DEFENDANT: My paper here says "both."

9

> THE COURT: . . . [T]he penalties are as to each offense. It may be customary, and it may be the Court's practice to sentence you concurrently on the offenses, but the Court has the authority to sentence you for each offense to a maximum of life and a mandatory minimum of ten, a $4 million fine, and a term of supervised release of five years. Do you understand that?
>
> THE DEFENDANT: (Nods head.)
>
> THE COURT: You understand that?
>
> THE DEFENDANT: I understand.
>
> THE COURT: The use of the word "both" can be confusing and then loosely used, but these are penalties applicable as to each offense. Do you understand that?
>
> THE DEFENDANT: Yes.

(D-792 at 29-30).

Furthermore, at sentencing, the Court again reviewed with Hartwig the two charges to which he pled, and Hartwig made no mention at that time that he misunderstood that fact. (D-790 at 2-3). In short, nothing in the record supports Hartwig's contention "that this Court would dismiss as part of the plea agreement" the charges in the Information filed in Criminal Case No. 8:07-cr-96-T-17EAJ pertaining to the Texas case. (D-cv-1 at 15).

Nor can Hartwig satisfy *Strickland*'s prejudice prong with respect to his first claim. Hartwig's sentence on the Southern District of Texas Information was ordered to run concurrently – not consecutively – to the sentence imposed on the Middle District of Florida indictment. Accordingly, regardless of the merits of the sentence on the Southern District of Texas case, Hartwig is still subject to an imprisonment term of 135 months on the Middle District of Florida indictment.

Hartwig's second ineffective assistance claim fares no better. The gist of this claim is that Hartwig's attorney was constitutionally ineffective in failing to argue that, "because

the government agree[d] that . . . Hartwig qualifie[d] for the safety valve, it tacitly also agree[d] that . . . [he] was a minor participant and was thus less culpable than most of the other players in the . . . drug organization." (D-cv-1 at 17). This argument is fatally flawed for a number of reasons.

As an initial matter, challenges to a court's applications of the guidelines are not cognizable under section 2255. *Paredes v. United States*, No. 8:06-cv-1916-T-17TBM, 2007 WL 2729573 at *5 (M.D. Fla. Sept. 18, 2007). *See Hill v. United States*, 368 U.S. 424, 428 (1962); *Burke*, 152 F.3d at 1331-32. To allow Hartwig to pursue this challenge now (in the guise of an ineffective assistance claim) would render collateral review nothing more than a substitute for direct appeal, which is not the purpose of section 2255 motions. *See Burke*, 152 F.3d at 1331.

Hartwig's minor role argument is meritless in any event. The safety valve and role in the offense guidelines are separate and distinct from one another, and contain their own criteria. While the safety valve provision does have a requirement pertaining to a defendant's role in the offense, that requirement is only that the defendant not have occupied an elevated position in the conspiracy, not that he was a minor or minimal participant.

Furthermore, by his own admission, Hartwig was involved in the transportation of roughly 450 kilograms of cocaine worth literally millions of dollars. See (D-567 at 17- 19). It is well-settled that a defendant's involvement in the transportation of such large quantities of drugs can, by itself, constitute a sufficient grounds for denying a minor role reduction. *United States v. Rodriguez DeVaron*, 175 F.3d 930, 937 (11th Cir. 1999).

Furthermore, Hartwig's involvement in the conspiracy was not as limited as he now

claims. By his own admission, Hartwig's participation in the conspiracy extended over at least two years, and included storing, as well as transporting, large shipments of cocaine and drug proceeds on behalf of certain members of the organization, including Portillo. See (D-567 at 17-18; D-792 at 35-38).

In light of these admissions, Hartwig cannot credibly claim that his attorney was constitutionally ineffective in failing to argue Hartwig's entitlement to a minor role reduction. Counsel cannot be deemed to have performed deficiently by failing to address an issue that reasonably would have been considered to be without merit. *See Davis v. Singletary*, 119 F.3d 1471, 1476 (11th Cir. 1997); *Spaziano v. Singletary*, 36 F.3d 1028, 1039 (11th Cir. 1994); *Pitts v. Cook*, 923 F.2d 1568, 1572-74 (11th Cir. 1991); *Thompson v. Wainwright*, 787 F.2d 1447, 1459 n.8 (11th Cir. 1986).

Nor – with respect to *Strickland*'s second prong – can Hartwig validly contend that the Court would have accorded him a minor role reduction had his attorney pursued such a claim.

Hartwig's arguments in his reply are not persuasive.

Accordingly, the Court orders:

That Hartwig's 28 U.S.C. § 2255 motion to vacate, set aside, or correct an allegedly illegal sentence (Doc. D-782; D-cv-1) is denied. The Clerk is directed to enter judgment against Hartwig and to close this case.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Defendant is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal

a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Defendant has not made the requisite showing in these circumstances.

Finally, because Defendant is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on January 26, 2009.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

AUSA: Christopher P. Tuite
Donald R. Hartwig